UNITED STATES of America, Plaintiff,

v.

Thomas MASOTTO, Defendant.

No. 92–CR–1341 (TCP).

United States District Court,
E.D. New York.

Jan. 29, 1993.

Mary Jo White, U.S. Atty., Mark O. Wasserman, Asst. U.S. Atty., Brooklyn, N.Y., for plaintiff.

Michael Rosen, Alan S. Futerfas, New York City, for defendant.

### MEMORANDUM AND ORDER

PLATT, Chief Judge.

Following his arrest pursuant to a warrant and an arraignment on a ten count indictment, defendant was detained in custody on an order of temporary detention issued by this Court on December 21, 1992

pending a hearing pursuant to the Bail Reform Act.

Defendant applied for bail pending trial; the Government opposed the application by a letter dated January 6, 1993; defendant responded to the Government's letter by a letter of his attorney, Michael Rosen, dated January 7, 1993 and the Court held a hearing thereon on January 8, 1993. After the hearing, this Court called two conferences with the attorneys, one on January 15, 1993 and the other on January 20, 1993, in order to discuss a series of proposed bail conditions, described below, designed to assure the safety of others in the community during the defendant's pre-trial release. Then on January 25, 1993, the Government made an oral application before this Court to remand the defendant pending trial and reject any further consideration of the proposed bail conditions in light of the Second Circuit's recent decision in *United States of America v. Orena, et al.*, 986 F.2d 628 (2d Cir.1993). For the reasons stated below, the defendant is remanded to detention and custody pending the trial of this action.

Section 3142 of Title 18 of the United States Code provides in pertinent part as follows:

(a) In general.—Upon the appearance before a judicial officer of a person charged with an offense, the judicial officer shall issue an order that, pending trial, the person be—

(1) released on personal recognizance or upon execution of an unsecured appearance bond, under subsection (b) of this section;

(2) released on a condition or combination of conditions under subsection (c) of this section;

(3) temporarily detained to permit revocation of conditional release, deportation, or exclusion under subsection (d) of this section; or

(4) detained under subsection (e) of this section.

\* \* \* \* \* \*

(c) Release on conditions.—(1) If the judicial officer determines that the release described in subsection (b) of this section will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, such judicial officer shall order the pretrial release of the person—

(A) subject to the condition that the person not commit a Federal, State, or local crime during the period of release; and

(B) subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community, which may include the condition that the person—

(i) remain in the custody of a designated person, who agrees to assume supervision and to report any violation of a release condition to the Court, if the designated person is able reasonably to assure the judicial officer that the person will appear as required and will not pose a danger to the safety of any other person or the community;

(ii) maintain employment, or, if unemployed, actively seek employment;

(iii) maintain or commence an educational program;

(iv) abide by specified restrictions on personal associations, place of abode, or travel;

(v) avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense;

(vi) report on a regular basis to a designated law enforcement agency, pretrial services agency, or other agency;

(vii) comply with a specified curfew;

(viii) refrain from possessing a firearm, destructive device, or other dangerous weapon;

(ix) refrain from excessive use of alcohol, or any use of a narcotic drug or other controlled substance, as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802), without a

prescription by a licensed medical practitioner;

(x) undergo available medical, psychological, or psychiatric treatment, including treatment for drug or alcohol dependency, and remain in a specified institution if required for that purpose;

(xi) execute an agreement to forfeit upon failing to appear as required, property of a sufficient unencumbered value, including money, as is reasonably necessary to assure the appearance of the person as required, and shall provide the court with proof of ownership and the value of the property along with information regarding existing encumbrances as the judicial office may require;

(xii) execute a bail bond with solvent sureties; who will execute an agreement to forfeit in such amount as is reasonably necessary to assure appearance of the person as required and shall provide the court with information regarding the value of the assets and liabilities of the surety if other than an approved surety and the nature and extent of encumbrances against the surety's property; such surety shall have a net worth which shall have sufficient unencumbered value to pay the amount of the bail bond;

(xiii) return to custody for specified hours following release for employment, schooling, or other limited purposes; and

(xiv) satisfy any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community.

(2) The judicial officer may not impose a financial condition that results in the pretrial detention of the person.

(3) The judicial officer may at any time amend the order to impose additional or different conditions of release.

\* \* \* \* \* \*

(f) Detention hearing.—The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of the person as required and the safety of any other person and the community—

(1) upon motion of the attorney for the Government, in a case that involves—

(A) a crime of violence;

\* \* \* \* \* \*

(2) upon motion of the attorney for the Government or upon the judicial officer's own motion, in a case that involves—

(A) a serious risk that the person will flee; or

(B) a serious risk that the person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

\* \* \* \* \* \*

(g) Factors to be considered.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an

offense under Federal, State, or local law;  and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

The indictment herein charges the defendant with:

1.  conspiring to maliciously damage and destroy by means of fire and explosives the FBI Building located at 369 Woodcleft Avenue, Freeport New York with two overt acts of (a) agreeing to pay a co-conspirator $2,500 to burn down the building and (b) paying the co-conspirator $1,000 to do so (Count one);

2.  knowingly, wilfully and maliciously damaging and destroying, by means of fire and explosives, the aforesaid building (Count Two);

3.  knowingly and wilfully and by means of arson, injuring property of the United States, namely, furniture, an alarm system and surveillance video tapes (Count Three);

4.  knowingly, wilfully and unlawfully conspiring to obstruct, delay and affect commerce by conspiring with others to unlawfully take and obtain property moving in commerce by means of actual and threatened force, violence and fear of immediate and future injuries (Count Four);

5.  knowingly and wilfully stealing and unlawfully taking and carrying away goods from a motor truck which was moving as part of an interstate shipment (Count Five);

6/7.  knowingly, wilfully and unlawfully obstructing commerce by unlawfully taking personal property in the possession of two separate truck drivers employed by two different companies, against their will by means of actual and threatened force, violence and fear of immediate and future injury, to wit, the threatened use of a firearm (Counts Six and Seven);

8.  knowingly and wilfully using and carrying a firearm during and in relation to a crime of violence, namely, the crime charged in Count Four (Count Eight);

9.  knowingly and wilfully using and carrying a firearm during and in relation to a crime of violence, namely, the crimes charged in Counts Four and Six (Count Nine);  and

10.  knowingly and wilfully using and carrying a firearm during and in relation to a crime of violence, to wit, the crimes charged in Counts Four and Seven (Count Ten).

## I.

The first factors to be considered "in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community" are the nature and circumstances of the offenses charged including whether the offenses are crimes of violence.  18 U.S.C. § 3142(g).  The crimes charged in the ten counts of the indictment are clearly crimes of violence and involve, in many of the counts, the use of guns.

## II.

The second factor under § 3142(g) is the weight of the evidence against the person.  At the Court's request, the Government submitted *in camera* to the Court the Grand Jury testimony and certain of the exhibits and transcripts of a few tapes.  The evidence so submitted is very substantial.  The Government has summarized some of this evidence in its letter dated January 6, 1993 under the headings "The

Arson" and "The Robberies" in the following language:

### The Arson

The indictment charges Masotto with conspiracy to commit arson relating to a fire at a building located at 369 Woodcleft Avenue, Freeport, New York. Masotto deliberately burned the building because he believed the FBI was investigating him and that they were using the building to store surveillance tapes of Masotto and other evidence against him. Masotto agreed to pay $2,500.00 for the commission of the arson in order to obstruct and interfere with the FBI's investigation. On February 22, 1991, Joseph Lucas, acting on behalf of Masotto, deliberately set fire to the building located at 369 Woodcleft Avenue. At the time of the fire, there was one person inside who was able to escape without injury. However, the building was completely destroyed, including some surveillance tapes and other government property.

### The Robberies

The indictment also charges Masotto with participating in a series of truck hijackings in Queens and Long Island and with using guns to carry out the hijackings.

The indictment charges that from March 1991 through June 1992, Masotto directed others to commit armed hijackings of a cigarette truck, a truck containing Italian Fabric and a truck containing Horizon telephones. During one of the hijackings, a truck driver was struck over the head with a black jack causing a head injury. In another hijacking, the truck driver was tied up and placed in the back of the truck with tape over his mouth. Moreover, guns were possessed and brandished in the face of the truck drivers in furtherance of these hijackings. These hijackings occurred at the direction of Thomas Masotto. It will be a further part of the government's proof that Masotto received a part of the proceeds of these hijackings.

In addition the Government has set forth the following under the category "Other Relevant Information":

### Other Relevant Information

Confidential informants have stated that Masotto operates a large scale loansharking business on Long Island. As part of his loansharking operation, Masotto uses threats, intimidation and violence to obtain payments from the borrower and to recover the amount of his loan. According to these informants, Masotto has also threatened to kill a loanshark victim if the money was not repaid.

Masotto ordered that the individual be killed in retaliation for the shooting of someone in Masotto's crew. Masotto had an individual severely beaten for "personal reasons".

The government has also received information from the informants that there have been death threats against a government witness from Masotto.

On May 13, 1992, in a recorded conversation, Masotto, who operates a carting company, was discussing how to go about destroying competitors' trucks by arson.

### III.

The third factor from § 3142(g), the defendant says, weighs heavily in his favor. In support of his good character, family ties, past conduct, etc., the defendant has submitted many letters attesting to the same.

### IV.

The key factor from § 3142(g) appears to be the fourth one, namely, "the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release."

The Government points to the intimidation and violence to obtain payments on loans, the threat to kill a loanshark victim if the money was not repaid, the order to kill an individual in retaliation for the shooting of another person, the severe beating of a person for "personal reasons," the alleged death threats against a Government witness and the alleged discussions about how to go about destroying competitors' trucks by arson, as well as the arson and bombing of the FBI Building and the

truck hijackings with guns for which the defendant has been indicted. Against this are the letters attesting to the defendant's character, family ties, employment, financial resources, length of residence in the community, community ties and past conduct with respect to his friends and neighbors.

Before receipt of the Second Circuit's opinion in *United States of America v. Orena, et al.*, 986 F.2d 628 (2d Cir.1993) issued on January 19, 1993, this Court proposed for the attorneys' consideration a set of conditions which might satisfy the requirement of assuring the safety of other persons in the community, namely, a $5,000,000.00 bond to be secured by a confession of judgment signed by the defendant and his wife and real properties with equities equalling approximately $2,000,-000.00; house confinement monitored by an electronic bracelet with exceptions only for necessary medical care and funerals of immediate family; electronic and/or personal surveillance of defendant's house, twenty-four hours a day, seven days per week, with all of the costs of the electronic bracelet and surveillance to be paid for in advance monthly by the defendant; consents of the defendant and members of his family in residence to tap at will all telephones in the house and all of defendant's businesses; a condition of no visits or telephone conferences except with his lawyer and members of his immediate family; consents to be executed by the defendant and his wife to periodic random searches of his premises and the standard conditions of pre-trial release including surrender of defendant's passport and waiver of extradition signed by the defendant.

Following the decision in the *Orena* case, the Government moved on January 25, 1993 to be relieved of further consideration of the bail conditions suggested by the Court as a possible ground for agreement between the parties on the grounds that the proposed bail conditions "have been rejected as conditions by the Second Circuit in the context of the *Orena* cases." Transcript of Conference, January 25, 1993 at 3. The Government argued "that the decision

itself demonstrates that ... if someone is dangerous to the community and these standards have to be imposed, then remand is the alternative pending trial as opposed to setting up a mini-MCC at Mr. Masotto's home." *Id.* at 4.

In *Orena*, the Second Circuit found that:

1. "[T]he first two statutory factors, the nature and circumstances of the offense charged and the weight of evidence, weigh heavily against pre-trial release." *Orena*, 986 F.2d at 632.

2. It agreed with Judge Glasser's conclusions in *United States v. Gotti*, 776 F.Supp. 666, 673 (E.D.N.Y.1991) (which involved substantially similar bail conditions as were at issue in *Orena* and are at issue in the case at bar), that "the conditions proposed do not provide the assurances of safety the community deserves. The wonders of science and of sophisticated electronic technology have made mobile and portable telephones commonplace. Communication devices are easily carried in briefcases and even shirt pockets. Pen registers and wiretaps are easily circumvented. Monitoring equipment is easily rendered inoperative or becomes so by mechanical failure."

3. The "additional" conditions (such as the ones prescribed in the case at bar), "including house arrest, electronic surveillance, and interactions limited to immediate family, do not alleviate appellee's danger to the community." *Orena*, 986 F.2d at 632.

4. "These conditions would at best 'elaborately replicate a detention facility without the confidence of security such a facility instills' ... safety of the community will be assured only if the government provides trustworthy, trained staff to carry out the extensive monitoring of homes, telephones, and travel that would be necessary to ensure compliance with the conditions of bail. If staff were not provided, protection of the community would be left largely to the word of [the defendant]

that he will obey the conditions. We find nothing in the Bail Reform Act that requires the government to staff home detention centers or allow dangerous defendants to be at large based upon their promise not to violate conditions of bail." *Id.* at 632–33 (quoting *Gotti,* 776 F.Supp. at 672).

5. "Quite apart from considerations of cost—although these are important— we do not believe that adequate staffing of home detention centers can be accomplished without extensive training both of the monitoring staff and their supervisors, activities not contemplated by the Bail Reform Act ... whether, even with trained staff, home detention centers would adequately protect the community is problematic." *Id.*

In short, the Second Circuit appears to be saying to us that in the case of "dangerous defendants" the Bail Reform Act does not contemplate the type of conditions suggested by this Court and that, even if it did, the conditions would not protect the public or the community, given the ease with which many of them may be circumvented.

Defendant argues that lesser conditions were held to be sufficient to protect the public from two convicted defendants, Messrs. Santopietro, the former mayor of Waterbury, Connecticut and Pisciotti, an official of that city, even though there were alleged threats to Government witnesses in that alleged conspiracy case. *United States v. Santopietro,* Nos. 92–1334(L), 1349, 1381 (2nd Cir.1993) (unreported). The alleged danger to the public and the community from those two defendants does not compare to the alleged danger from the defendant in the case at bar. The danger here is clearly closer to the danger presented by Messrs. Orena and Amato in the *Orena* case.

Under the circumstances, this Court feels that the Court of Appeals has virtually mandated that in a case of this kind, there are no conditions or combination of conditions which will reasonably assure the safety of any other person in the community

and accordingly we must remand the defendant to detention and custody pending the trial of this action.

SO ORDERED.